IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF OHIO

WESTERN DIVISION AT DAYTON

DAVID P. BURROWS,

      Plaintiff,

v.

                                  CASE NO. 3:17-cv-00186-TMR

                                  JUDGE THOMAS M. ROSE

FUYAO GLASS AMERICA INC., ET. AL.

Defendants.

---

### DECISION AND ENTRY DENYING DEFENDANTS' MOTIONS TO DISMISS. (DOCS. 6 & 18).

---

Pending before the Court are Motions to Dismiss from each of the two Defendants: Fuyao Glass America Inc., (Doc. #6) and Cho Tak Wong (Doc. # 18). Therein, Defendant Fuyao Glass America Inc. requests that the Court dismiss Counts 1, 2, 3, and 4 against it, and Defendant Cho Tak Wong requests that the Court dismiss Counts 1, 3, and 4 against him. These Motions are now fully briefed and ripe for decision. A factual background will be followed by the applicable legal standard and analysis of the motions to dismiss.

### I.      Background

Plaintiff David P. Burrows ("Burrows") brings a complaint for recovery on claims of fraud in the inducement, breach of contract, promissory estoppel, defamation, and three (3) separate, but related discrimination claims. (Doc #1 PAGEID #4).

1

In August of 2013, then-President of Defendant Fuyao Glass America Inc. ("Fuyao") sought to hire Burrows away from his employment with the Dayton Development Coalition ("Coalition"), as well as from his position as owner and operator of a Cold Stone Creamery franchise. (Doc. #1 PAGEID #5).   Fuyao is a North American subsidiary of Fuyao Group, a Chinese company. *Id*.  According to Burrows, Co-Defendant, Cho Tak Wong ("Cho"), is the chairman of Fuyao Group and Fuyao. *Id*.  Due to his position with the Coalition, Burrows had numerous meetings with Cho related to Fuyao's selection of the greater Dayton metropolitan area for expansion. *Id*.

Burrows insisted he would not leave his employment for parallel pay, but claims he was instructed by Cho to tell Fuyao "what you want and I will sign it." *Id*.  Burrows made Fuyao aware that if he agreed to accept employment, he wanted to be sure he was compensated through 2017. *Id*.  Following these conversations, Cho allegedly approved Burrows' proposed terms of employment which were guaranteed to continue through 2017, and included a base pay higher than the president of Fuyao. (Doc. #1 PAGEID #6).  According to Burrows, the term sheet was signed by Cho, however, Burrows was not given a copy of the signed form. *Id*.

On July 24, 2015, the term sheet prepared by Burrows was formatted into an employment contract by Fuyao's Director of Human Resources, and signed by Fuyao President John Gauthier. (Ex. A). The terms of the employment contract read:

The following terms and conditions of employment are agreed upon between Chairman Cho and Mr. David Burrows:

- Annual salary of $180,000

- $98,000 minimum in additional annual compensation through bonus paid.

- Total annual compensation minimum guaranteed at $278,000 through 2017 and pro-rated for 2015.

Or, if higher

- Bonus compensation to be at the same level and structure as the President and Vice President.

- Three (3) weeks of annual vacation time, which will be prorated for 2015

*Id.* Fuyao's Human Resources Department extended an express offer of employment to Burrows which included the previously mentioned employment contract, outlining the compensation package, as well as information regarding a tentative mid-August 2015 start date, which was presumably accepted by Burrows. (Ex. B).

On November 14, 2016, during a company meeting, Cho falsely announced Burrows' resignation from Fuyao. (Doc. #1 PAGEID #7). Two days later, an online news article published on the Dayton Business Journal's website stated that Burrows had stepped down from his position. *Id.* The author of the article, Tristan Navera, confirmed that the article was written based upon information received from Fuyao representatives. *Id.* Cho was quoted directly in the article stating, "These changes to our senior management team are an important step forward as we transition from a construction phase into a mass production phase." (Ex. D).

Burrows claims Cho had no intention of continuing Burrows' employment past Fuyao's construction phase and into its mass-production phase. (Doc#1 PAGEID #8). According to Burrows, he was replaced by Sunny Yiqun Sun ("Sun"), a Fuyao worker from China. *Id.* Allegedly, Sun was unable to continue employment with Fuyao until she worked with Fuyao in China for a year, which would enable Sun to procure her L-1 visa. *Id.* at #8, #9. Burrows claims Cho, while in negotiations with Sun, made reference that her working at Fuyao "would be good to help her Chinese heritage," and how "Americans need to listen to Chinese." (Doc. #1

PAGEID #7).  Burrows claims he was terminated by Fuyao without cause and without written notice. *Id.*

On November 17, 2016, following Burrows' alleged resignation, Fuyao's Assistant General Counsel informed Burrows that he is not entitled to compensation or any remuneration for work not performed. (Doc #1 PAGEID #28).  Additionally, Fuyao's Assistant General Counsel informed Burrows that the form titled "employment contract" amounted to nothing more than a compensation agreement. *Id.*

Burrows claims it is Fuyao's contention that Burrows was an employee at will, and could be terminated with or without cause at any time. *Id.*  Approximately three weeks into employment, an employee handbook acknowledgement and receipt was signed by Burrows, stating:

> I have entered into my employment relationship with Fuyao voluntarily and acknowledge that there is no specific length of employment.  Accordingly, either I or Fuyao can terminate the relationship at will, with or without cause at any time, so long as there is not a violation of applicable state or federal laws.

Subsequently, Burrows sued Fuyao and Cho.  Burrows' complaint was originally filed in the Common Pleas Court of Montgomery County, Ohio claiming:

1.  Fraud in the inducement;

2.  Breach of contract;

3.  Promissory estoppel;

4.  Defamation; and

5.   Three (3) counts of Discrimination

(Doc. #1 PAGEID #4).  On May 25, 2017, the case was removed to the U.S District Court, Southern District of Ohio (Dayton), by Defendants.

On June 14, 2017, Cho filed a motion to quash and to dismiss, arguing that Burrows failed to effectuate service in accordance with the mandates of the Convention of Services Abroad of Judicial and Extrajudicial Documents, as Cho is a resident of the People's Republic of China. (Doc. #5 PAGEID # 85).  In addition, Cho alleged a violation of insufficient process under Rule 12(b) (4), on the grounds the summons and complaint were not translated into Chinese, as required by the Hague Convention. *Id*.  Burrows filed a memorandum in opposition to Cho's motion to quash and dismiss, arguing Cho was properly served at his place of business pursuant to Civ. R. 4.1(1) (Doc. #9 PAGEID #110).

In his reply memorandum, Cho again argues that service was not valid due to Hague Convention Specifications. However, a proof of service entry dated September 18, 2017, asserting that Cho was served at the Marriott Hotel in Dayton Ohio was entered on the docket. (Doc. #14 PAGEID # 161).  On June 14, 2017, Fuyao filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b) (6), alleging that Burrows failed to state a claim for which relief may be granted. (Doc. #6 PAGEID #90, 96).  Burrows filed a memorandum in opposition to Fuyao's motion to dismiss, arguing that relief can be granted for all claims stated. (Doc. #10 PAGEID #114). Fuyao's reply memorandum in support of motion to dismiss, argues Burrows' simultaneous pursuit of fraud-in-the- inducement tort and his breach of contract claim cannot be based on the same obligations. (Doc. # 11 PAGEID #135, 136).  In addition, Fuyao argues that a promissory estoppel claim and a breach of contract claim cannot be simultaneously maintained. (Doc. #11 PAGEID # 139).

According to Fuyao, Burrows' defamation claim fails due to intra-corporate immunity privilege, and his discrimination claims should not be held to the higher standard for reverse discrimination claims. (Doc. #11 PAGEID # 143).  On October 6, 2017, Cho adopts and incorporates by reference the motion to dismiss filed by Defendant Fuyao, and all arguments regarding Counts 1, 3, 4, 5, 6, and 7 of the complaint. (Doc. #18 PAGEID #168).

## II. STANDARD OF REVIEW-MOTION TO DISMISS

The purpose of a Rule 12(b)(6) motion to dismiss is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true. *Mayer v. Mylod*, 988 F. 2d 635, 638 (6th Cir. 1993) (citing *Nishiyama v. Dickson County, Tennessee*, 814 F.2d 277, 279 (6th Cir. 1987)). Put another way, "the purpose of a motion under Federal Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; the motion is not a procedure for resolving a contest between the parties about the facts or the substantive merits of the plaintiff's case." 5B Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure § 1356 (3d ed. 2004).  Further, for purposes of the motion to dismiss, the complaint must be construed in the light most favorable to the plaintiff and its allegations taken as true. *Scheuer v. Rhodes*, 416 U.S. 232, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974).

To survive a 12(b) (6) motion to dismiss, a plaintiff must provide more than labels and conclusions, and a formulaic recitation of the elements of a cause of action is not enough. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent

with the allegations in the complaint." *Id*. at 1969. However, the factual allegations must be enough to raise a right to relief above the speculative level. *Bell Atlantic Corp*., 127 S.Ct. at 1965 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, p. 235-236 (3d ed. 2004)). The factual allegations in the complaint, even if doubtful in fact, must do something more than merely create a suspicion of a legally cognizable right. *Id*.

Also, to survive a motion to dismiss under Fed. R. Civ. P. 12(b) (6), "a … complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Columbia Natural Resources, Inc. v. Tatum*, 58 F. 3d 1101 (6th Cir. 1995). The Court "need not accept as true legal conclusions or unwarranted factual inferences*." Morgan v. Church's Fried Chicken*, 829 F. 2d 10, 12 (6th Cir. 1987). Put another way, bare assertions of legal conclusions are not sufficient. *Lillard v. Shelby County Bd. of Educ*., 76 F. 3d 716, 726 (6th Cir. 1996). It is only well-pleaded facts which are construed liberally in favor of the party opposing the motion to dismiss. *Id*.

### III. ANALYSIS

#### A. Fraud in the inducement

Defendants Fuyao and Cho argue that Burrows claim of fraud in the inducement fails because Burrows cannot simultaneously pursue a fraud in the inducement tort claim based on the same alleged obligations present in the written contract. (Doc. #6 PAGEID #92-93). "A claim of fraud in the inducement arises when a party is induced to enter into an agreement through fraud or misrepresentation*." Kehoe Component Sales, Inc. v. Best Lighting Prods*., 933 F. Supp. 2d 974, 2013 U.S. Dist. LEXIS 38816, 2013 WL 1165028 (S.D. Ohio Mar. 19, 2013) (citing: *Captiva, Inc. v. Viz Commc'ns, Inc.*, 85 Fed. Appx. 501, 505 (6th Cir. 2004)) (applying Ohio law,

internal quotations omitted).  Fraud can be defined as "any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another." *McClellan v. Cantrell*, 217 F.3d 890 (7th Cir. Ill. July 5, 2000) (citing 4 Collier on Bankruptcy para. 523.08[1] [e], p. 523-45 (15th ed., Lawrence P. King ed., 2000).  Ohio courts have defined the term "induce" to mean influencing or prevailing upon someone with persuasion or argument. *Simmons v. Sheets*, 2011 U.S. Dist. LEXIS 27502 (S.D. Ohio Feb. 23, 2011).

Proving fraud in the inducement requires showing the defendant knowingly made a material misrepresentation, with intent to induce reliance of the plaintiff, which in turn, lead to detriment of the plaintiff due to the misrepresentation. *ABM Farms, Inc. v. Woods*, 81 Ohio St.3d 498, 502, 1998 Ohio 612, 692 N.E.2d 574 (1998) (citing *Beer v. Griffith*, 61 Ohio St. 2d 119, 123, 399 N.E.2d 1227 (1980)).

According to Ohio law, the elements of fraud in the inducement are "(1) a representation or, when there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying upon it, (5) justifiable reliance on the representation or concealment, and (6) an injury proximately cause by that reliance. *Superior Care Pharm., Inc. v. Med. Shoppe Int'l, Inc.*, 2011 U.S. Dist. LEXIS 13013 (S.D. Ohio Feb. 10, 2011) (citing *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 475, 1998 Ohio 294, 700 N.E.2d 859 (1998)).

Fraud in the inducement can "generally" be maintained simultaneously with a breach of contract claim because the duty not to breach a contract is "separate and independent" from the duty not to deceive a party entering into an agreement or contract. *Stalvey v. NVR, Inc.*,

2012 U.S. Dist. LEXIS 2506, at *17; *King v. Hertz Corp.*, 1:09-CV-2674, 2011 U.S. Dist. LEXIS 35610, 2011 WL 1297266, at *3 (N.D. Ohio. Mar. 31, 2011).  However, according to the Ohio Supreme Court, "a claim of fraudulent inducement 'asserts that a misrepresentation of facts outside the contract or other wrongful conduct induced a party to enter into the contract.'" *Id*. at *18 quoting: *ABM Farms, Inc. v. Woods*, 81 Ohio St. 3d 498, 1998 Ohio 612, 692 N.E.2d 574, 578 (Ohio 1998).  Ohio law prohibits a claim in tort predicated upon the same actions that create a breach of contract. *Eggert Agency, Inc. v. NA Mgmt. Corp*., 2008 U.S. Dist. LEXIS 90830 at *19.

   "The general rule is that tort claims such as deceit and misrepresentation 'cannot be predicated upon promises or representations relating to future actions or conduct.'" *Id*. at *20 quoting: *Tibbs v. Nat'l Homes Constr. Corp*., 52 Ohio App. 2d 281, 286, 369 N.E.2d 1218 (Ohio Ct. App. 1977).  In *Eggert Agency, Inc*., the Plaintiff claimed that before entering into the contract, the Defendant never intended to follow through on promises allegedly made. *Id*.  This type of circumstance falls into an exception to the general rule of prohibiting future promises if at the time the promise was made, the promisor had no intention of keeping the promise. *Id*.

   In the case at bar, Burrows claims Fuyao had no intention of continuing Burrows employment after Sunny Yiquan Sun was available to return from China. (Doc. #1 PAGEID #9).  Burrows alleges he justifiably relied upon Fuyao and Cho's representation to leave his position with the Coalition and the selling of his Cold Stone Creamery franchise. *Id*.

   "In ruling on a Motion to Dismiss for failure to state a claim upon which relief can be granted, the factual allegations in the Complaint must be taken as true and construed in a light most favorable to the plaintiff. *Burhman v. Wilkinson*, 2003 U.S. Dist. LEXIS 10038 (S.D.

Ohio Feb. 7, 2003) citing: *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995). Here, Burrows claims that his employment contract insured that he would remain employed through 2017. Doc. #1 PAGEID #8 (35). Burrows contends Fuyao "had no intentions" of continuing Burrow's employment past the "constructive phase" and into the "mass-production phase." *Id.* at (36). According to Burrows, Fuyao's desire was to discontinue his employment once Sunny Yiqun Sun was available to return from China and assume a position with Fuyao. *Id.*

Burrows claims that Fuyao induced him to sell his Cold Stone Creamery franchise and leave his position with the Coalition over Burrows' repeated protestations. (Doc. #1 PAGEID #9). In addition, Burrows claims to have justifiably relied upon Cho and Fuyao's representation of continued employment and compensation through 2017 as contained in the employment contract. *Id.* Also, Burrows alleges he was terminated without cause and without notice by Fuyao prior to the end of 2017, leading to damages in an amount no less than $441, 908.68. *Id.*

The Court finds Plaintiff Burrows claims plausible, thus Defendants' Motions to Dismiss claim #1 are **DENIED**.

## B.    Breach of Contract

Fuyao emphasizes that under Ohio law, an employment contract is presumed to be at-will, unless there are "facts and circumstances which indicate that the agreement is for a specific term." (Doc. #6 PAGEID #94)(citing *Goddard v. Abbott Labs*., 2005 WL 1388389, *3, no. 2:03-CV-525 (S.D. Ohio June 10, 2005)(Sargus, J.)). Under Ohio law, there is "a strong presumption in favor of a contract terminable at will." *Melott v. ACC Operations, Inc*., 2006 U.S. Dist. LEXIS 46328 at * 11 quoting: *Mers v. Dispatch Printing Co*., 19 Ohio St. 3d 100, 102, 19 Ohio B. 261,

483 N.E.2d 150, 153 (1985). In addition, the Doctrine of Employment at Will holds that "unless otherwise agreed, either party… may terminate the employment relationship for any reason which is not contrary to law." *Id.* There are few exceptions to the at-will employment doctrine, but one such exception is the presence of an express contract. *Goddard v. Abbott Labs*., 2005 U.S. Dist. LEXIS 11304 at *10 citing*: Mers v. Dispatch Printing*, 19 Ohio St.3d 100, 103, 19 Ohio B. 261, 483 N.E.2d 150 (1985).

In determining the existence of a valid contract, the Court must determine if an offer was accepted and if it was supported by valid consideration. *Tilahun v. Philip Morris Tobacco Co*., 2005 U.S. Dist. LEXIS 41361 at *9 (S.D. Ohio Oct. 28 2005) (citing *Sashti, Inc. v. Glunt Ind., Inc*., 140 F. Supp. 2d 813, 816 (N.D. Ohio 2001)). Once the validity of a contract is established, three elements must be tested to determine whether the contract has been breached: (1) performance by the plaintiff, (2) breach by the defendant, and (3) damages to the plaintiff. *Id.* at 8.

### 1.      Offer and Acceptance (Mutual Assent)

Mutual assent to the terms of a contract is typically manifested by an offer and acceptance. *Am. Signature, Inc. v. Extreme Linen, LLC*, 2015 U.S. Dist. LEXIS 41958 at *34. Ohio "law is clear that to constitute a valid contract, there must be an offer on the one side and an acceptance on the other." *Big Lots Stores, Inc. v. Jaredco, Inc*., 182 F. Supp. 2d 644, 649 citing: *Noroski v. Fallet*, 2 Ohio St. 3d 77, 442 N.E.2d 1302, 1304 (Ohio 1982). And where there is a signed offer and acceptance, a meeting of the minds exists. *Campbell v. Triad Fin. Corp*., 2007 U.S. Dist. LEXIS 77623 at *64 citing: *Cuyahoga Cty. Hospitals v. Price*, 64 Ohio App. 3d 410, 416, 581 N.E.2d 1125 (1989).

In the case at bar, Fuyao's Director of Human Resources Judy Lewkowski, formatted a document entitled "Employment Contract," signed by the President of Fuyao, John Gauthier. This employment contract specified salary and bonus equaling to $278,000 of annual compensation, minimally guaranteed through the year 2017. The language of the employment contract, "through 2017," favors the idea that a specific term was indicated in the offer.

## 2. Valid Consideration

"Valid consideration requires that the parties bargain for performances or return promises." *Price v. Taylor*, 575 F. Supp. 2d 845, 853 (citing: *Harmon v. Philip Morris, Inc.*, 120 Ohio App. 3d 187, 190, 697 N.E.2d 270 (1997). An employee's performance of job duties in exchange for benefits and compensation constitutes consideration. *Russell v. GTE Gov't Sys. Corp.*, 232 F. Supp. 2d 840, 853 (S.D. Ohio 2002)(citing: *Price v. Public Serv. Co. of Colo.*, 1 F. Supp. 2d 1216, 1228 (D. Colo. 1998)).

Here, Burrows performed job duties in exchange for the compensation promised by Fuyao, therefore consideration was established. In addition to consideration being established, Burrows alleges a clear offer of an employment contract and an acceptance of the contract terms by him. Having found offer, acceptance, and valid consideration, the Court concludes there was a valid contract between the parties.

## 3. Establishing Breach

Where the language of a contract is unambiguous and clear, the Court can rely on the plain language of the contract to decipher the obligations and rights of the parties. *Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg.*, 649 F. Supp. 2d 702,728 (N.D. Ohio 2009); s*ee also Star Lock Sys. v. TriTeq Lock & Sec., L.L.C.*, 631 F. Supp. 2d 935, 939 (S.D.

Ohio 2009). Under Ohio law, when the Court examines a contract in attempt to ascertain the parties' intent, the intent is presumably found to reside in the language of the agreement. "The Ohio Supreme Court has held that if a contract is clear and unambiguous, then its interpretation is a matter of law, and there is no issue of fact to be determined." *Id*. (quoting *Inland Refuse Transfer Co. v. Browning-Ferris Indus. of Ohio, Inc*., 15 Ohio St. 3d 321, 15 Ohio B. 448, 474 N.E.2d 271, 272 (1984)).

In the case at bar, the employment contract's language is clear and unambiguous as it pertains to the annual compensation minimum is guaranteed at $278,000. This clear and unambiguous language also shows the compensation amount as guaranteed through 2017 and pro-rated for 2015. A court "is not permitted to alter a lawful contract by imputing an intent contrary to that expressed by the parties" as it applies to a written contract. *Id*. (citing *Westfield Ins. Co. v. Galatis, 100 Ohio St*.3d 216, 2003 Ohio 5849, 797 N.E.2d 1256, 1261-62 (2003)). Therefore, the Court finds the contract language enforceable as written, and Defendants Fuyao's Motion to Dismiss claim #2 is **DENIED**.

## C. PROMISSORY ESTOPPEL

Burrows's claim III is for promissory estoppel. A prima facie case for promissory estoppel requires a showing of: (1) a clear and unambiguous promise, (2) reasonable and foreseeable reliance by the party to whom the promise is made, and (3) an injury due to reliance. *Lower v. Elec. Data Sys. Corp*., 494 F. Supp. 2d 770 citing: *Cohen & Co., CPAs v. Messina, CPA*, 24 Ohio App.3d 22, 26, 24 Ohio B. 44, 492 N.E.2d 867, 872 (Ohio App. 8 Dist. 1985).

Defendants Fuyao and Cho claim promissory estoppel is not applicable because Burrows' employment by Fuyao was governed by a written contract. (Doc. #6 PAGEID #96). Fuyao and

Cho cite *Harwood v. Avaya Corp*., for the proposition that promissory estoppel is "an equitable doctrine resorted to for the enforcement of promises that are non-contractual and otherwise unenforceable," and "not available as a remedy where the legal relationship between the parties is governed by a valid and enforceable contract." *Id.*

Promissory estoppel is an equitable or quasi contractual claim that may be pled in the alternative to a breach of contract claim. *Bonner Farms, Ltd. v. Power Gas Mktg. & Transmission, Inc*., 2007 U.S. Dist. LEXIS 63359 at *23.   In Ohio, pleading breach of contract and promissory estoppel as alternatives is permissible as a general principle, so long as, the validity or enforceability of the contract is in question. *Morgan Tire of Sacramento, Inc. v. Goodyear Tire & Rubber Co*., 2016 U.S. Dist. LEXIS 132461 at *21-22.  Therefore, a claimant may plead for relief for breach of contract and promissory estoppel, but may not recover for both. *Bonner Farms*, 2007 U.S. Dist. at *24.   "Thus, where there is a valid contract between parties, quasi contractual relief is not a remedy." *Id.*

Here, the validity and or enforceability of a contract are in question.  While responding to claim III (promissory estoppel), Fuyao and Cho argue they accept as true Plaintiff's asserting that his employment with Fuyao was governed by a written contract. (Doc. #6 PAGEID #96). However, while responding to claim II (breach of contract); Fuyao argues the relationship with Burrows is not governed by contract, but rather as an at-will employment relationship.

In the case at bar, Burrows alleges Exhibit A serves as an employment contract that promised continued employment through 2017, while Defendants Fuyao and Cho claim the document marked Exhibit A, serves merely as a "compensation agreement" highlighting Burrows, being contracted as an at-will employee. (Doc. #1 PAGEID #28).  Burrows claims the

promise of being compensated and employed through 2017 was clear and unambiguous. (Doc. # 1 PAGEID #10). In addition, Burrows claims to have relied "reasonably and foreseeably" upon Cho's promise of continued employment and compensation through 2017 to leave his position with the Coalition and sell his Cold Stone Creamery franchise. *Id.* Lastly, Burrows claims he was injured due to reliance upon Cho's promise of continued employment and compensation through 2017 in an amount no less than $441,908.68. *Id.*

Accepting Burrows' assertions as true, all requirements have been successfully demonstrated for a showing of a viable promissory estoppel claim. In addition, with no consensus between the parties of the validity or enforceability of a contract, both claims of breach of contract and promissory estoppel may be claimed in the alternative. Thus, Defendants' Motion for dismissal of claim #3 is **DENIED**.

### D.      Defamation

Defendants Fuayo and Cho allege Burrows' defamation claim fails to state a claim for which relief can be granted. (Doc. #6 PAGEID #97). In Ohio, the moving party bears the burden of proving by "clear and convincing" evidence that a false, defamatory statement of fact about the Plaintiff was at least negligent in publication. *Dorricott v. Fairhill Ctr. for Aging*, 2 F. Supp. 2d 982, 993 (N.D. Ohio 1998) (citing *Lansdowne v. Beacon Journal Pub. Co.,* 32 Ohio St. 3d 176, 178-180, 512 N.E.2d 979 (1987)). According to Ohio Courts, the clear and convincing standard is an intermediate standard lying at a point between the "preponderance of the evidence" and the "beyond a reasonable doubt" standards. *Bradford Co. v. Afco Mfg.*, 2007 U.S. Dist. LEXIS 31975 at *8 (S.D. Ohio 2007).

Defamation is defined as an unprivileged publication of false information about another that causes injury to "a person's reputation or exposes him to public hatred, contempt, ridicule, shame, or disgrace or affects him adversely in his trade or business." *Wylie v. Arnold Transp. Servs.*, 494 F. Supp. 2d 717, 727 (S.D. Ohio 2006)(citing: *McCarthy v. Cincinnati Enquirer, Inc.* (1956), 101 Ohio App. 297, 1 O.O.2d 131, 136 N.E.2d 393; *Matalka v. Lagemann* (1985), 21 Ohio App.3d 134, 136, 21 OBR 143, 145, 486 N.E.2d 1220, 1222).

Ohio law lists the elements of defamation as:

> "(a) a false and defamatory statement concerning another:
> (b) an unprivileged publication to a third party; (c) fault amounting
> at least to negligence on the part of the publisher; and (d) either
> actionability of the statement irrespective of special harm or the
> existence of special harm caused by publication."

*Graves v. Dayton Gastroenterology, Inc*., 2014 U.S. Dist. LEXIS 114358 at *21-22 (S.D. Ohio 2015) (citing: *Harris v. Bornhorst*, 513 F.3d 503, 522 (6th Cir. 2008)).

For defamation to be actionable, it must either be defamation per se or defamation per quod. *Wagner v. Circle W Mastiffs*, 732 F. Supp. 2d 792, 804 (S.D. Ohio 2010). Defamation actionable per se requires one of four sections; (1) the information imports a charge of an offense that is indictable involving infamous punishment or moral turpitude; (2) the information relays a contagious or offensive disease that would deprive the person from his role in society; (3) the information can injure a person in his occupation or trade; or (4) the information subjects the person to ridicule, contempt, or public hatred. *Id*. (citing: *Am. Chem. Soc. v. Leadscope*, 2010 Ohio 2725, 2010 WL 2396544, *12 (Ohio Ct. App. June 15, 2010). In contrast, defamation per quod exists if the information can "reasonably" have two meanings, with one being defamatory while the other is innocent. *Id*. (citing: *Moore v. P.W. Publishing Co*., 3 Ohio St. 2d 183, 209 N.E.2d 412, 415 (Ohio 1965).

In the case at bar, Burrows claims Cho made a false statement of fact that Burrows resigned his position with Fuyao effective Monday, November 14, 2016, in the presence of Fuyao employees and representatives. (Doc. #1 PAGEID #11). The statements made by Cho were claimed to be made with ill will, malice, and reckless disregard. *Id.* In addition, Burrows alleges Fuyao representatives provided false information of Burrows resignation to the Dayton Business Journal which caused Burrows ridicule, shame, disgrace, and adversely affected him professionally. *Id.* Burrows appears to have sufficiently pled facts that demonstrate Fuyao published an unprivileged, false and defamatory statement concerning Burrows that was actionable as defamation per se for subjecting Burrows to professional ridicule. However it remains a question of fact whether Cho published unprivileged information to a third party, as Burrows claims Cho made "his false statement… in the presence of Fuyao employees and representatives. (Doc. #1 PAGEID #11). If a claimant successfully establishes a prima facie case of defamation, the defending party has the defense of conditional or qualified privilege at its disposal. *Leisure Sys. v. Roundup LLC*, 2012 U.S. Dist. LEXIS 155948 at *73 (S.D. Ohio 2012) (citing: *A & B-Abell Elevator Co.*, 73 Ohio. St. 3d 1, 7 (Ohio 1995)).

According to Fuyao and Cho, Plaintiff Burrow's claim for defamation should be dismissed as: (1) Fuyao and Cho enjoy "intra-corporate immunity," (2) the publisher never used the word "resigned" in the article, and (3) characterizing an employee departure as a resignation cannot be defamatory. (Doc. #6 PAGEID #97-100). Defenses such as qualified privilege may be invoked only after a prima facie case of defamation is established. *Kinney v. Kroger Co.*, 146 Ohio App. 3d 691 (citing: *Hahn v. Kotten* (1975), 43 Ohio St. 2d 237, 243, 331 N.E.2d 713).

The intra-corporate immunity doctrine establishes that individuals operating within the same "legal entity" are incapable of conspiring with one another if the acts in question fall within

the scope of their employment. *Carna v. Teays Valley Local Sch. Dist.*, 2012 U.S. Dist. LEXIS 94911 at *9 (S.D. Ohio 2012). However, if the spoken or written publication of the alleged defamation is done with actual malice, or is exchanged with someone outside of the qualified privilege, protection of the privilege is lost. *Stearns v. Ohio Sav. Asso.*, 15 Ohio App. 3d 18 at *20 (Ohio App. 1984).

Malice in the context of publishing information is defined as knowing the information is false or acting with reckless disregard of whether the information is true or false. *Torrance v. Firstar*, 529 F. Supp. 2d 836 at *844 (S.D. Ohio 2007)(citing *Wolfe v. MBNA America Bank*, 485 F.Supp.2d 874, 888 (W.D. Tenn. April 25, 2007). "To show reckless disregard for the truth, plaintiff must show by clear and convincing evidence that (1) false statements were made with a high degree of awareness of their probable falsity, or (2) the defendant entertained serious doubts as to the truth of the publication." *Helms v. Fischer Mgmt.*, 2005 U.S. Dist. LEXIS 27259 at *34-35 (S.D. Ohio Nov. 10, 2005)(quoting *Perez v. Scripps Howard Broadcasting Co.*, 35 Ohio St.3d 215, 218, 520 N.E.2d 198, 202 (1988)).

According to Burrows, Cho's alleged false statements made at the meeting were with "ill will, malice, and reckless disregard," an assertion which, if true, would void intra-corporate immunity protection. (Doc. #1 PAGEID #11). In addition, if Cho made the statement in the presence of "representatives" not constituting the "legal entity" of the corporation, the intra-corporate immunity protection will also be lost. Lastly, whether or not the newspaper repeated the Fuyao's alleged wording that Burrows resigned, given his short term with firm, those who did hear it could reasonably construe it to mean something was amiss.

The Court has no authority to dismiss a claim without a demonstration the Plaintiff is unable to prove facts that would entitle him to relief. *Doe v. SexSearch*, 502 F. Supp. 2d 719, 724 (citing: *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)). Burrows sufficiently pled the necessary elements of defamation against Defendants Fuyao and Cho. Therefore Defendants' Motions to Dismiss claim #4 are **DENIED.**

### E.    Discrimination

Fuyao Glass America Inc. ("Fuyao") sought to hire Burrows away from his employment with the Dayton Development Coalition ("Coalition"), as well as from his position as owner and operator of a Cold Stone Creamery franchise. (Doc. #1 PAGEID #5). Fuyao is a North American subsidiary of Fuyao Group, a Chinese company. *Id*.

Burrows' has adequately pleaded claims for discrimination against Fuyao Glass America for reverse discrimination. To establish a prima facie case of discrimination, a plaintiff must demonstrate that (1) he was a member of a protected class, (2) he was subjected to an adverse employment action, (3) he was qualified for the position, and (4) he was replaced by someone outside the protected class. *Douglas v. Eaton Corp*., 577 F. App'x 520, 524 (6th Cir. 2014). "In adapting the test to cases of reverse discrimination, the Sixth Circuit has held that, under the first prong, plaintiff must demonstrate 'background circumstances [to] support the suspicion that the defendant is the unusual employer who discriminates against the majority.'" *Zambetti v. Cuyahoga Cmty. College*, 314 F.3d 249, 255 (6th Cir. 2002) (brackets sic). Reverse discrimination plaintiffs "establish[] a prima facie case . . . upon a showing that the employer treated differently employees who were similarly situated but not members of the protected group." *Jones v. Ohio State Univ*., S.D. Ohio No. 2:05-cv-137, 2007 U.S. Dist. LEXIS 38717, *19 (May 29, 2007).

The Sixth Circuit has previously said that the "background circumstances" prong only required of "reverse discrimination" plaintiffs, "may impermissibly impose a heightened pleading standard on majority victims of discrimination." *Zambetti v. Cuyahoga Cmty. College*, 314 F.3d 249, 257 (6th Cir. 2002). The Sixth Circuit has "serious misgivings about the soundness of a test which imposes a more onerous standard for plaintiffs who are white or male than for their non-white or female counterparts." *Pierce v. Commonwealth Life Ins. Co*., 40 F.3d 796, 801 n.7 (6th Cir. 1994). Indeed, the Sixth Circuit has stated that such "background circumstances" might exist in a reverse racial discrimination suit where "the defendant has a history of improperly considering race as a factor in employment-related decisions, where the employer's workforce is predominantly comprised of minorities, or where the person in charge of making employment decisions is a minority." *Toth v. City of Toledo*, 480 Fed. Appx. 827, 832-33 (6th Cir. 2012). Here, Burrows has alleged his belief that Sunny Yiqun Sun, a person whose national origin is Chinese, replaced him at FGA. (Doc. # 4, PAGEID # 58).

Normally, a foreign employer might enjoy a degree of protection from such a claim under a Friendship, Commerce and Navigation Treaty, but no such treaty exists between the United States and China. Given this exposure, Plaintiff has alleged sufficient facts in alleging that he was intentionally hired to hold a place for a foreign national and eventually fired when the foreign national became available. Discovery may well reveal direct evidence of discrimination, or details of a situation of background circumstances sufficient to withstand a motion for summary judgment.

**IV.      Conclusion**

Because Burrows sufficiently pleaded the necessary elements of defamation against

Defendants Fuyao and Cho, Defendants' Motions to Dismiss, (Docs. 6 & 18), are **DENIED.**[1]

**DONE** and **ORDERED** in Dayton, Ohio, this Friday, December 8, 2017.


s/Thomas M. Rose

_____

THOMAS M. ROSE

UNITED STATES DISTRICT JUDGE

---

[1] The Court acknowledges the valuable contribution and assistance of judicial extern Timothy Hill in drafting this opinion.